UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT

- - - - - - - - - - - - - - - - - - - - - - - - - - - -

| | | | |
|---|---|---|---|
| IN RE: | ) | CASE NO. | 04-30417 (LMW) |
| | ) | | |
| THE HOMESTEADS COMMUNITY AT | ) | CHAPTER | 7 |
| NEWTOWN, LLC, | ) | | |
| | ) | | |
| DEBTOR. | ) | | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - -

| | | | |
|---|---|---|---|
| MICHAEL J. DALY, Chapter 7 Trustee, | ) | ADV. PRO. NO. | 04-3037 |
| | ) | | |
| PLAINTIFF | ) | DOC. I.D. NOS. | 55, 56, 83, 96, 100, |
| | ) | | 102 |
| vs. | ) | | |
| | ) | | |
| KONOVER CONSTRUCTION CORP., | ) | | |
| | ) | | |
| DEFENDANT. | ) | | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - -

## APPEARANCES

| | |
|---|---|
| Michael J. Daly, Esq. | Plaintiff Chapter 7 Trustee |
| Law Offices of Michael J. Daly | |
| 3 Forest Park Drive | |
| Farmington, CT  06032 | |
| | |
| William S. Fish, Esq. | Attorney Designate for the Plaintiff Chapter 7 |
| Tyler, Cooper & Alcorn, LLP | Trustee |
| CityPlace 1 | |
| 185 Asylum Street, 35th Floor | |
| Hartford, CT  06103 | |
| | |
| Julia A. Manning, Esq. | Attorney for Defendant Konover Construction |
| Eric S. Goldstein, Esq. | Corp. |
| Shipman & Goodwin | |
| One Constitution Plaza | |
| Hartford, CT  06103 | |
| | |
| Louis J. Testa, Esq. | Attorney for Interested Party Franklin |
| Neubert, Pepe & Monteith, P.C. | Construction LLC |
| 195 Church Street, 13th Floor | |
| P. O. Box 1940 | |
| New Haven, CT  06510 | |

Roberta Napolitano, Esq.                          Chapter 11 Trustee for Nuevo Pueblo, LLC
P. O. Box 9177
Bridgeport, CT  06601

Steven E. Mackey, Esq.                            Attorney for the United States Trustee
Office of the U.S. Trustee
The Giaimo Federal Building
150 Court Street, Room 302
New Haven, CT  06510

## MEMORANDUM AND ORDER RE: (1) APPLICATION
## TO EMPLOY SPECIAL COUNSEL AND (2) OBJECTION TO AMENDED ANSWER

Lorraine Murphy Weil, United States Bankruptcy Judge

Before the court are the following (collectively, the "Matters"):  (1) the above-referenced

plaintiff/chapter 7 trustee's (the "Trustee") application to employ substitute special counsel to

represent the Trustee in this adversary proceeding ("This Adversary Proceeding") (A.P. Doc. I.D.

No. 96 (as amended by A.P. Doc. I.D. No. 104), the "Application");[1] (2) the above-referenced

defendant's ("Konover") objection to the Application (A.P. Doc. I.D. No. 100, the "Konover

Objection"); (3) Franklin Construction LLC's ("Franklin") objection to the Application (A.P. Doc.

I.D. No. 102, the "Franklin Objection", collectively with the Konover Objection, the "Objections");

and (4) the Trustee's objection to Defendant's Amended Answer (A.P. Doc. I.D. No. 56, the

"Answer Objection").  This court has jurisdiction over this matter as a core proceeding pursuant to

---

[1]        References herein to the docket of This Adversary Proceeding are in the following
form:  "A.P. Doc. I.D. No. ___."  References herein to the docket of any of the three relevant
bankruptcy cases discussed below are in the following form (respectively):  "Case No. _____ Doc.
I.D. No. ___."

28 U.S.C. §§ 157(b) and 1334(b) and that certain Order dated September 21, 1984 of this District

(Daly, C.J.).[2]

## I.    BACKGROUND

### A.    Relevant Bankruptcy Cases

There are three bankruptcy cases relevant to the Matters: the above-captioned case ("This

Case"); Case No. 04-32365 (the "Nuevo Pueblo Case"); and Case No. 04-34262 (the "Homesteads

Case").  Each of those cases is discussed below.

### 1.    This Case

This Case was commenced by the filing of a voluntary chapter 11 petition filed by the above-

captioned debtor (the "Debtor") on February 2, 2004.  That petition was signed by Linda K.

Silberstein as "member" and by Patrick W. Boatman, Esq. as "attorney."  (*See* Case No. 04-30417

Doc. I.D. No. 2).  As a result, the Debtor took on the status of debtor in possession and remained in

control of its assets and business affairs.  *See* 11 U.S.C. § 1107.  At the time the petition was filed,

the Debtor owned an approximately 50.9 acre parcel of land (the "Subject Property") located in

Newtown, Connecticut.  The Debtor's apparent objective at that time was to develop the Subject

Property as a community consisting of 38 age-restricted condominiums and a 162 unit congregate

care property.  (*See* A.P. Doc. I.D. No. 69).

During the month of February, 2004, the Debtor commenced six adversary proceedings (*see*

Case No. 04-30417 Doc. I.D. Nos. 17, 18, 19, 22, 23, 24) (the "Adversary Proceedings") aimed (in

part) at clearing the title to the Subject Property from certain alleged liens and/or other

---

[2]      That order referred to the "Bankruptcy Judges for this District" *inter alia* "all
proceedings arising under Title 11, U.S.C. , or arising in . . . a case under Title 11, U.S.C. . . . ."

encumbrances.[3]  This Adversary Proceeding was one of the Adversary Proceedings and will be discussed more fully below.  Attorney Boatman represented the Debtor in each of the Adversary Proceedings.

On October 7, 2004, the Debtor filed a motion to convert This Case to a case under chapter 7 of the Bankruptcy Code.  (*See* Case No. 04-30417 Doc. I.D. No. 84.)  That motion was granted and a conversion order entered on October 12, 2004.  (*See* Case No. 04-3017 Doc. I.D. No. 93.)  Michael J. Daly, Esq. was appointed as chapter 7 trustee in This Case and (as of the date hereof) continues to serve in that capacity.  The conversion terminated the Debtor's tenure as representative of the estate in favor of the Trustee.  *Cf.* 11 U.S.C. § 1107.

By application filed on February 2, 2005, the Trustee sought to retain Attorney Boatman as special counsel to prosecute four of the Adversary Proceedings (including This Adversary Proceeding).  (*See* Case No. 04-30417 Doc. I.D. No. 142.)[4]  Consistent with this court's procedures and on the "no objection" of the Office of the United States Trustee (the "UST"), this court granted that application without a hearing by order entered on February 7, 2005.  (*See* Case No. 04-30417 Doc. I.D. No. 143, the "Boatman Retention Order.")  Motions to reconsider the Boatman Retention Order were filed by various movants (including Franklin but not including Konover).  (*See* Case No. 04-30417 Doc. I.D. Nos. 145, 147, the "Reconsideration Motions.")

The Reconsideration Motions alleged (among other things) that Attorney Boatman had (and at least as of that time still) represented Ms. Silberstein and certain of her affiliates (including Nuevo

---

[3]        Some of the Adversary Proceedings since have been closed.

[4]        By order entered on December 17, 2004, the court approved the Trustee's retention of the firm of Reid and Riege, P.C. ("Reid and Riege") as the Trustee's general chapter 7 counsel in this case.  (*See* Case No. 04-30417 Doc. I.D. No. 128.)

Pueblo, LLC ("Nuevo Pueblo").  (*See* Case No. 04-30417 Doc. I.D. Nos. 145, 147.)  On April 11,

2005, the Trustee filed an Application To Expand the Scope of Reid and Riege's Employment and

To Increase Cap. (*See* Case No. 04-30417 Doc. I.D. No. 179.)  That application apparently was filed

in response to the Reconsideration Motions, sought to retain Reid and Riege as counsel in three of

the Adversary Proceedings (but not This Adversary Proceeding)[5] and recited that, "[a]fter careful

analysis, the Trustee and Attorney Boatman concluded that defense of [A]ttorney Boatman's

retention would be unduly burdensome and cost prohibitive to the estate and its creditors."  (Case

No. 04-30417 Doc. I.D. No. 179 at 2.)  The foregoing application was granted by an order entered

on April 15, 2005.  (*See* Case No. 04-30417 Doc. I.D. No. 182.)  On April 14, 2005, the Trustee filed

an application to retain the law firm of Suisman, Shapiro, Wool, Brennan, Gray & Greenberg

("SSWBG&G") to represent him in This Adversary Proceeding.  (*See* Case No. 04-30417 Doc. I.D.

No. 184.)  That application was granted by order entered on April 19, 2005.  (*See* Case No. 04- 30417

Doc. I.D. No. 188.)  The Reconsideration Motions were marked "off."

Konover filed a proof of claim in This Case for an alleged secured claim in the amount of

$1,290,606.00 (plus interest).  (*See* Case No. 04-30417 Claims Register, Claim No. 20.)  Attached

to that claim was a copy of a Certificate of Mechanics' Lien purportedly with respect to the Subject

Property.[6]  Franklin filed an amended proof of claim in This Case for an alleged claim in the amount

of $1,877,400.00 for "money loaned" purportedly secured by a mortgage on the Subject Property.

---

[5]    Reid and Riege apparently had a conflict with respect to This Adversary Proceeding.

[6]    The certificate also asserted a lien on the Homesteads Facility (as hereafter defined).
(*See* Section I.A.3, *infra.*)

- 5 -

(*See* Case No. 04-30417 Claims Register, Claim No. 23.)[7]  Franklin also filed an amended proof of

claim in This Case for an alleged unsecured "bond claim" in the amount of $1,274,025.82.  (*See id.,*

Claim No. 24.)[8]

On March 3, 2005, the Trustee filed a motion to sell the Subject Property free and clear of

liens pursuant to 11 U.S.C. §§ 363(b) and 363(f).  (*See* Case No. 04-30417 Doc. I.D. No. 152.)  That

motion was granted by an order entered on April 15, 2005.  (*See* Case No. 04-30417 Doc. I.D. No.

183, the "Sale Order.")[9]  On May 16, 2005, the Debtor (by Attorney Boatman) filed a motion to

reconsider the Sale Order.  (*See* Case No. 04-30417 Doc. I.D. No. 194.)  That motion was denied by

order dated May 16, 2005.  (*See* Case No. 04-30417 Doc. I.D. No. 198.)  On August 8, 2005, the

Trustee filed a motion to substantively consolidate this case with the chapter 7 case of Nuevo

Pueblo.[10]  (Case No. 04-30417 Doc. I.D. No. 216, the "Trustee's First Consolidation Motion.")  On

August 24, 2005, the Debtor (by Attorney Boatman) filed an objection to the Trustee's First

---

[7]      (Among others) the Debtor, Nuevo Pueblo and Homesteads (as hereafter defined) were all joint obligors on the relevant $1,400,000.00 note (the "Note").  Of the three entities, only the Debtor (Franklin claims) appears to have secured its obligation with a mortgage.

[8]      Both of the Franklin claims were claims assigned to it by Greenwich Insurance (the "Greenwich Assignment").

[9]      Pursuant to the Sale Order, the alleged lien (the "Alleged Lien") of Konover "floated" to the proceeds (the "Sale Proceeds") of the resulting sale of the Subject Property.  *See* 11 U.S.C. § 363(f).

[10]      "The substantive consolidation of estates in bankruptcy effects the combination of the assets and the liabilities of distinct, bankrupt entities and their treatment as if they belonged to a single entity."  *F.D.I.C. v. Colonial Realty Co.,* 966 F.2d 57, 58 (2d Cir. 1992).

Consolidation Motion. (Case No. 04-30417 Doc. I.D. No. 226.)[11]  On August 31, 2005, the Trustee marked the hearing on the Trustee's First Consolidation Motion "off" with right of reclaim.

On September 19, 2005, the Trustee filed a motion to disqualify Attorney Boatman as counsel for both the Debtor and Ms. Silberstein. (*See* Case No. 04-30417 Doc. I.D. No. 238.)  That motion alleged (among other things) that, when the Debtor (through Attorney Boatman) objected to proposed actions by the Trustee, Attorney Boatman really was representing Ms. Silberstein. (*See id.*)  The September 23, 2005 hearing on the motion was marked off as "resolved, parties will follow up with a stip[ulation]." (*See* Case No. 04-30417 Docket entry for September 23, 2005.)  No stipulation was filed but, on November 1, 2005 Attorney Boatman filed a motion to withdraw as the Debtor's attorney. (*See* Case No. 04-30417 Doc. I.D. No. 248.)  Citing certain of the foregoing history, that motion concluded that "[r]ather than consume the Court's time and resources in a hearing on the disqualification motion, Movant has assisted the Debtor to find replacement counsel, F. Timothy McNamara, Esq. of Hartford, Connecticut who has appeared in this action on behalf of the Debtor effective October 26, 2005." (*Id.* ¶ 10.)  The court granted Attorney Boatman's motion by order issued on December 13, 2005. (*See* Case No. 04-30417 Doc. I.D. No. 266.)

On April 24, 2006, William S. Fish, Jr., Esq. and James R. Byrne, Esq. of Tyler Cooper & Alcorn, LLP ("TC&A") filed a Notice of Appearance and Request for Notice as counsel for the Debtor. (*See* Case No. 04-30417 Doc. I.D. No. 282.)  That representation was limited to proceedings in respect of Case No. 04-30417 Doc. I.D. Nos. 217 and 257 which involved the Debtor's objection to the Town of Newtown's motion to disburse a share of the Sale Proceeds to it as a relevant secured creditor. (*See* A.P. Doc. I.D. No. 107 (transcript of 1/23/08 hearing, the "First Hearing Transcript")

---

[11]        Other parties also filed objections.

at 8:18 – 9:8 (statement by the Trustee).)  (*See* also Case No. 04-30417 Doc. I.D. No. 283.)  The

Trustee did not object to the Town's motion and, in fact, had already reached an agreed-upon

resolution with the Town. The Debtor did not prevail on its objection. (*See* Case No. 04-30417 Doc.

I.D. Nos. 276, 344.)

On March 6, 2007, Konover filed a motion to substantively consolidate This Case with the

Nuevo Pueblo Case.  (*See* Case No. 04-30417 Doc. I.D. No. 325, the "First Konover Consolidation

Motion.")  The hearing on the First Konover Consolidation Motion was continued on numerous

occasions until, on September 12, 2007, it was "marked off with a right to reclaim." (*See id.* Docket

Entry for September 12, 2007.)

### 2.     The Nuevo Pueblo Case

The Nuevo Pueblo Case was commenced by an involuntary petition filed on May 14, 2004

by New Haven Mortgage Refinance, LLC against Nuevo Pueblo.  (*See* Case No. 04-32365 Doc. I.D.

No. 1.)[12]  That case was assigned to the Honorable Albert S. Dabrowski, Chief United States

Bankruptcy Judge for this district.  An answer to the involuntary petition was filed on June 10, 2004

(by Attorney Boatman as counsel for Nuevo Pueblo).  (*See* Case No. 04-32365 Doc. I.D. No. 7.)  An

order for relief (apparently on a consensual basis) was entered in this case on October 18, 2004.  (*See*

Case No. 04-32365 Doc. I.D. No. 14.)  Michael J. Daly, Esq. (*i.e.,* the Trustee in This Case) was

appointed chapter 7 trustee in the Nuevo Pueblo Case.  Nuevo Pueblo filed its Schedules and

Statement of Financial Affairs which disclosed that Ms. Silberstein was Nuevo Pueblo's "Sole

Member."  (*See* Case No. 04-32365 Doc. I.D. No. 18 (Statement of Financial Affairs, item 21).)

---

[12]     Franklin subsequently joined in the involuntary petition as co-petitioner. (*See* Case
No. 04-32365 Doc. I.D. No. 12.)

Nuevo Pueblo's Schedules and Statement of Financial Affairs also disclosed that Nuevo Pueblo's only assets were two parcels of real property (the "Nuevo Pueblo Property") in Newtown, Connecticut and that Nuevo Pueblo had no income.  (*See* Case No. 04-32365 Doc. I.D. No. 18.)  On December 6, 2004, the Trustee filed a notice that a distribution was likely in the Nuevo Pueblo Case. (*See* Case No. 04-32365 Doc. I.D. No. 19.)[13]

Franklin filed a proof of claim in the Nuevo Pueblo Case asserting an unsecured claim (for "money loaned") in the amount of $1,400,000.00 (Case No. 04-32365 Claims Register, Claim No. 3).[14]  Konover did not file a claim in the Nuevo Pueblo Case.  (*See* Nuevo Pueblo Case Claims Register.)

On August 11, 2005, the Trustee filed a motion to consolidate the Nuevo Pueblo Case with This Case.  (*See* Case No. 04-32365 Doc. I.D. No. 27, the "Second Trustee Consolidation Motion," collectively with the First Trustee Consolidation Motion, the "Trustee Consolidation Motions.")[15] Nuevo Pueblo (by Attorney Boatman) filed an objection to the Second Trustee Consolidation Motion.  (*See* Case No. 04-32365 Doc. I.D. No. 32.)  On September 1, 2005, the Trustee marked the Second Trustee Consolidation Motion "off with right to reclaim."  (*See* Case No. 04-32365 Docket Entry for September 1, 2005.)

On October 21, 2005, the Trustee filed an application to employ a broker to market the Nuevo Pueblo Property.  (*See* Case No. 04-32365 Doc. I.D. No. 34.)  Nuevo Pueblo objected to that

---

[13]     To date, the Trustee has not filed a similar notice in This Case.

[14]     That claim referred to both the Note and the Greenwich Assignment.

[15]     As can be deduced from the discussions above, at the time the Trustee filed the Trustee Consolidation Motions, both This Case and the Nuevo Pueblo Case were chapter 7 cases and the Trustee was the chapter 7 trustee in each case.

application asserting that claims in the Nuevo Pueblo case would be satisfied in This Case. (*See* Case No. 04-32365 Doc. I.D. Nos. 35, 37.) On November 29, 2005, the Trustee filed a motion to sell (the "Nuevo Pueblo Sale Motion") the Nuevo Pueblo Property and a motion for approval of bidding procedures (with a "stalking horse" bidder). (*See* Case No. 04-32365 Doc. I.D. Nos. 44, 46, 48.) On January 4 and 9, 2006, the court issued orders granting the Trustee's application to employ the broker, overruling Nuevo Pueblo's related objection and approving the bidding procedures. (*See* Case No. 04-32365 Doc. I.D. Nos. 60, 62, 63.) Notwithstanding that Nuevo Pueblo had not objected to the bidding procedures motion, Nuevo Pueblo (by Attorney Boatman) filed a notice of appeal with respect to all of the foregoing orders on January 17, 2006. (*See* Case No. 04-32365 Doc. I.D. No. 67.) Nuevo Pueblo also sought a stay pending appeal. (*See* Case No. 04-32365 Doc. I.D. No. 69.)

On January 25, 2006, the Trustee filed a motion to disqualify Attorney Boatman as Nuevo Pueblo's (and Ms. Silberstein's) counsel asserting that "Attorney Boatman is currently using information he obtained from the . . . [Debtor's] estate, the Nuevo [Pueblo] estate and the Trustee for the benefit of his real, albeit undisclosed, client, [Ms.] Silberstein and against his actual and/or former clients, the Trustee and the . . . [Debtor's] and Nuevo [Pueblo's] estates." (Case No. 04-32365 Doc. I.D. No. 73 ¶ 20.) Attorney Boatman filed an objection to that motion. (*See* Case No. 04-32365 Doc. I.D. No. 92.)

On February 1, 2006, the Debtor moved to convert the Nuevo Pueblo Case to a case under chapter 11 of the Bankruptcy Code. (*See* Case No. 04-32365 Doc. I.D. No. 79.) The Trustee objected to that motion. (*See* Case No. 04-32365 Doc. I.D. No. 88.) On February 6, 2006, TC&A appeared in the Nuevo Pueblo Case for Nuevo Pueblo. (*See* Case No. 04-32365 Doc. I.D. No. 85.) On the same day, Nuevo Pueblo (by TC&A) filed an objection to the Nuevo Pueblo Sale Motion.

- 10 -

(*See* Case No. 04-32365 Doc. I.D. No. 86.)  Shortly thereafter, Attorney Boatman filed a motion to

withdraw his appearance as Nuevo Pueblo's attorney.  (*See* Case No. 04-32365 Doc. I.D. No. 101.)[16]

On February 13, 2006, TC&A withdrew Nuevo Pueblo's pending appeal (which mooted the related

motion for stay).  (*See* Case No. 04-32365 Doc. I.D. No. 103.)  On February 19, 2006, the court

issued orders denying the Nuevo Pueblo Sale Motion (and sustaining Nuevo Pueblo's related

objection) because the Nuevo Pueblo Property had been marketed as a "package" without an

opportunity to purchase the two parcels separately.  (*See* Case No. 04-32365 Doc. I.D. Nos. 104,

105; *see also* Oral Record of 2/16/06 hearing at 5:49:56 *et seq.* (rationale for court's decision).)

On March 1, 2006, the UST filed a motion to appoint a chapter 11 trustee in the case or to

reconvert the case to chapter 7.  On March 6, 2006, the court issued orders converting the Nuevo

Pueblo Case to a case under chapter 11 and appointing a chapter 11 trustee (and overruling the

related objection). (*See* Case No. 04-32365 Doc. I.D. Nos. 115, 116, 120.)[17] The court's rationale for

appointing a trustee was its concerns as to Ms. Silberstein's fitness to function as the manager of a

debtor in possession which is a fiduciary position.  (*See* Oral Record of 3/6/06 hearing at 11:02:34

*et seq.*)  On March 8, 2006, the UST appointed Roberta Napolitano, Esq. as chapter 11 trustee (the

"Nuevo Pueblo Trustee") in the Nuevo Pueblo Case.  (*See* Case No. 04-32365 Doc. I.D. No. 121;

*see also id.,* Doc. I.D. No. 130 (order approving appointment).)

On April 5, 2006, the Nuevo Pueblo Trustee sought approval of her employment of a broker

to market the Nuevo Pueblo Property.  (*See* Case No. 04-32365 Doc. I.D. No. 133.)  That application

---

[16]        That motion never was acted upon by the court.

[17]        As a result, Nuevo Pueblo did not gain the status of debtor in possession. *Cf.*
11 U.S.C. §§ 1104, 1107.

was granted without objection by order entered on April 18, 2006.  (*See* Case No. 04-32365 Doc. I.D. No. 140.)  On October 20, 2006, the Nuevo Pueblo Trustee filed a motion to sell the Nuevo Pueblo Property "free and clear," together with a motion for approval of bidding procedures (including a "stalking horse" bid).  (*See* Case No. 04-32365 Doc. I.D. Nos. 169, 170; *see also id.,* Doc. I.D. No. 188 (notice of sale).)  The bidding procedures were approved (without objection) by order entered on November 16, 2006.  (*See* Case No. 04-32365 Doc. I.D. No. 189.)  The Nuevo Pueblo Trustee's sale motion was granted (without objection) by order entered on January 18, 2007. (*See* Case No. 04-32365 Doc. I.D. No. 227.)  On February 16, 2007, the Nuevo Pueblo Trustee reported that the sale of the Nuevo Pueblo Property had closed.  (*See* Case No. 04-32365 Doc. I.D. No. 237.)

On March 6, 2007, Konover filed a motion to consolidate the Nuevo Pueblo Case with This Case.  (*See* Case No. 04-32365 Doc. I.D. No. 258, the "Second Konover Consolidation Motion.") The Second Konover Consolidation Motion was continued on numerous occasions and on September 12, 2007 was marked "off . . . with right to reclaim."  (*See* Case No. 04-32365 Docket entry for 9/12/07.)

### 3.    The Homesteads Case

The Homesteads Case was commenced on September 10, 2004 by the filing of a voluntary chapter 11 petition by The Homesteads at Newtown LLC ("Homesteads").  (*See* Case No. 04-34262 Doc. I.D. No. 4.)  That petition was signed by Ms. Silberstein as "Managing Member" and by Mark R. Jacobs, Esq. of Jacobs Partners LLC as attorney.  (*See id.*)[18]  Homesteads operated an assisted living facility in Newtown, Connecticut (with the related land, collectively the "Homesteads

---

[18]    The Homesteads Case was assigned to the undersigned judge.

- 12 -

Facility"). (*See* Case No. 04-34262 Doc. I.D. No. 57 (Schedule A - Real Property).) The UST

appointed an official committee of unsecured creditors (the "Homesteads Committee") in the

Homesteads Case on October 19, 2004. (*See* Case No. 04-34262 Doc. I.D. No. 62.) On October 20,

2004, Homesteads (as debtor in possession) filed a motion to sell the Homesteads Facility (and for

other related relief). (*See* Case No. 04-34262 Doc. I.D. No. 64, the "Homesteads Sale Motion.")

Konover filed a "limited objection" to the Homesteads Sale Motion asserting a mechanics' lien in

respect of the Homesteads Facility and (among other things) taking issue with the Homesteads Sale

Motion's characterization of that lien as invalid. (*See* Case No. 04-34262 Doc. I.D. No. 86.) The

limited objection also asserted that "[on] or about May 16, 2001, Konover filed a blanket Certificate

of Mechanics' Lien in the amount of $1,290,606.00 on the . . . [Homesteads Facility] and the . . .

[Subject Property] . . . . The two parcels join to form a single subdivision called the Homesteads of

Newtown." (*Id.* ¶ 1.) That limited objection was withdrawn on the record on November 3, 2004.

Subsequently, General Electric Capital Corp. ("GECC"), the Homesteads Committee and

Homesteads stipulated to entry of an order (entered on December 15, 2004 (*see* Case No. 04-34262

Doc. I.D. No. 121)), among other things, modifying the automatic stay in the Homesteads Case to

permit GECC to prosecute to conclusion a prepetition foreclosure action (the "GECC Foreclosure

Action") in respect of the Homesteads Facility but precluding GECC from seeking a sale or law day

prior to February 1, 2005.

On November 8, 2004, the court entered an order scheduling an auction of the Homesteads

Facility (and a hearing for sale approval) for December 3, 2004. (*See* Case No. 04-34262 Doc. I.D.

No. 89.) That auction and hearing were continued from time to time. On February 22, 2005, the

Homesteads Committee filed a motion to appoint a chapter 11 trustee in the Homesteads Case or,

- 13 -

in the alternative, to convert the case to chapter 7, alleging as grounds, *inter alia,* that Ms. Silberstein was attempting to manipulate the sale process for her own benefit and not for the benefit of creditors. (*See* Case No. 04-34262 Doc. I.D. No. 161.)   After a hearing on April 12, 2005, the court (Dabrowski, J.)[19] entered an order appointing a chapter 11 trustee in the Homesteads Case.  (*See* Case No. 04-34262 Doc. I.D. No. 185.)  The primary rationale for that order was articulated by Judge Dabrowski  as follows:  "Following the commencement  of the bankruptcy case  Ms. Silverstein[20] utilized her controlling authority on occasion in a self interested manner, often in an undocumented manner, and exercised . . . that control with indifference to the law." (Case No. 04-34262 Doc. I.D. No. 197 (Transcript of 4/12/05 hearing) at 268:22 – 269:1 (court's ruling).)  Pursuant to an order entered on April 20, 2005 (by Judge Dabrowski), Elizabeth J. Austin, Esq. was named as the chapter 11 trustee in the Homesteads Case.  (*See* Case No. 04-34262 Doc. I.D. No. 190.)

On May 18, 2005, the court approved the Homesteads chapter 11 trustee's application to employ The Long Hill Company to run the Homesteads Facility for her.  (*See* Case No. 04-34262 Doc. I.D. No. 227.)  On July 6, 2005, the Homesteads Case was converted to a chapter 7 case on the motion of the Homesteads chapter 11 trustee.  (*See* Case No. 04-34262 Doc. I.D. No. 243.)  Richard Belford, Esq. was appointed the chapter 7 trustee for Homesteads.  On March 27, 2006, the chapter 7 trustee filed a notice that there were no assets in the Homesteads Case available for distribution to creditors other than "Court-Ordered carve-out funds [from GECC's Security Interest] which I paid

---

[19]      The undersigned judge was temporarily unavailable.

[20]      The court notes that references to a "Ms. Silverstein" in several transcripts produced in the relevant bankruptcy cases and in This Adversary Proceeding are intended to refer to Ms. Silberstein.

to the appropriate Chapter 11 administrative recipients."  (Case No. 04-34262 Doc. I.D. No. 294.)

The Homesteads Case was closed on May 4, 2006.[21]

Konover filed a proof of secured claim in the Homesteads Case substantially similar to the proof of claim it filed in This Case.  (*See* Case No. 04-34262 Claim Register, Claim No. 33.) Franklin filed a proof of unsecured claim with respect to the Note and Greenwich Assignment substantially similar to the proof of claim it filed in the Nuevo Pueblo Case.  (*See* Case No. 04-34262 Claims Register, Claim No. 34.)

### B.    This Adversary Proceeding

As noted above, the Debtor (by Attorney Boatman) commenced This Adversary Proceeding by the filing of a complaint (A.P. Doc. I.D. No. 1, the "Original Complaint") on February 19, 2004. "Count One" of the Original Complaint attacked the Alleged Lien as a fraudulent transfer under applicable Connecticut law because (allegedly) "[a]t the time that Konover filed its Certificate of Mechanic's Lien against the . . . [Subject Property], the Debtor was not indebted to Konover at all or . . . was indebted to Konover for an amount substantially less than the amount of the . . . [Alleged Lien]."  (A.P. Doc. I.D. No 1 ¶ 14.)  "Count Two" of the Original Complaint further alleged that the Alleged Lien otherwise is fatally defective under applicable Connecticut law.  (*See id.* ¶¶ 19-20.) "Count Three" of the Original Complaint alleged that Konover's actions in respect of the Alleged Lien constituted tortuous interference with certain of the Debtor's contracts.  (*See id.* ¶¶ 24-28.)

---

[21]    GECC's claim in the Homesteads Case has been assigned to HFS Newtown, LLC ("HFS") (for unspecified consideration).  (*See* Case No. 04-34262 Doc. I.D. No. 220.)  The docket of the GECC Foreclosure Action discloses that HFS was substituted for GECC as party plaintiff. Title has passed in the foreclosure but what happened to Konover's alleged mechanics' lien in that process is unclear.

Konover filed an answer to the Original Complaint on June 16, 2004. (A.P. Doc. I.D. No.

17, the "Original Answer.") The Original Answer asserted five "affirmative defenses." On February

11, 2005, Attorney Boatman filed an appearance on behalf of the Trustee and moved to have the

Trustee substituted as plaintiff (in lieu of the Debtor). (*See* A.P. Doc. I.D. Nos. 28, 29.) The Trustee

was so substituted by order entered on March 24, 2005. (*See* A.P. Doc. I.D. No. 34.) On October

21, 2005, Andrew Brand, Esq. of SSWBG&G filed a notice of appearance in This Adversary

Proceeding for the Trustee. (*See* A.P. Doc. I.D. No. 36.)[22]

On March 6, 2007, Konover filed an "Amended Answer, Affirmative Defenses and

Counterclaim." (*See* A.P. Doc. I.D. No. 55, the "Proposed Amended Answer.") The Proposed

Amended Answer asserts the previous "affirmative defenses" and a new "counterclaim" (the

"Counterclaim"). (*See id.*) The Counterclaim is set forth in two counts. The "first count" (the "Veil

Piercing Count") of the Counterclaim seeks to pierce the corporate veil between the Debtor, Ms.

Silberstein (and her husband) and certain affiliated entities. (*See id.* ¶¶ 1-28.) The "second count"

(the "Substantive Consolidation Count") of the Counterclaim seeks to substantively consolidate the

bankruptcy estates of the Debtor and Nuevo Pueblo. (*See id.* ¶¶ 28 [sic]-51.) On March 14, 2007,

the Trustee (by Attorney Brand) filed an objection (*i.e.,* the Answer Objection) to the Proposed

Amended Answer essentially seeking (on various theories) to strike the Counterclaim. The Answer

---

[22]        Raymond L. Baribeault, Esq. of the same firm also appeared for the Trustee. (*See* A.P. Doc. I.D. No. 40.) Attorney Boatman appears never to have formally withdrawn from This Adversary Proceeding.

Objection was first scheduled for a hearing on April 4, 2007 but that hearing was continued from
time to time thereafter.[23]

On August 17, 2007, the Trustee (by Attorney Brand) filed a motion to amend the Original
Complaint. (A.P. Doc. I.D. No. 71.)[24]  The motion to amend the Original Complaint was granted
by an order entered on September 14, 2007. (*See* A.P. Doc. I.D. No. 79.)  The Amended Complaint
is set forth in six counts:

- Count One (Slander of Title)

- Count Two (Tortuous Interference)

- Count Three (CUTPA)

- Count Four (Avoidance of Fraudulent Conveyances)

- Count Five (Discharge of [Defective] Mechanics' Lien)

- Count Six (Disallowance of Claim)

On October 1, 2007, Konover filed a motion to dismiss certain counts of the Amended
Complaint (*i.e.,* Count One and Count Three). (*See* A.P. Doc. I.D. No. 81, the "Motion To
Dismiss.") On the same date, Konover filed a motion to "bifurcate" the trial on the Amended
Complaint (and the Proposed Amended Answer) by conducting an initial trial on Count Five of the
Amended Complaint and the Veil Piercing Count. (*See* A.P. Doc. I.D. No. 83, the "Motion To
Bifurcate.")  The Trustee (through Attorney Baribeault) filed objections to the Motion To Dismiss

---

[23]      The matter was to be heard on May 30, 2007 and appears to have "fallen off" the
court's calendar until it was rescheduled for a November 7, 2007 hearing (and then further noticed
for a December 5, 2007 hearing and (subsequently) a January 9, 2008 hearing).

[24]      The proposed amended complaint appears in the docket of This Adversary Proceeding
as A.P. Doc. I.D. No. 69 (the "Amended Complaint").

and the Motion To Bifurcate on November 2, 2007.  (*See* A.P. Doc. I.D. Nos. 88, 89.)  The Motion

To Dismiss and the Motion To Bifurcate (together with the related objections) initially were

scheduled for a November 7, 2007 hearing but were continued from time to time to December 5,

2007.  At that hearing, the Trustee requested a continuance to January 9, 2008 and advised the court

that the delay was because Attorney Brand was "seriously ill" and, accordingly, the Trustee would

be filing an application to employ substitute counsel.  (*See* Oral Record of 12/5/07 hearing at 2:04:47

– 2:05:10.)[25]

On January 9, 2008, the Trustee filed the Application which seeks to employ TC&A to

represent him in This Adversary Proceeding.  The Konover Objection was filed on January 18, 2008

and the Franklin Objection was filed on January 22, 2008.[26]  The Trustee filed an amendment to

Attorney Fish's affidavit in support of the Application (A.P. Doc. I.D. No. 104, the "Amended

Affidavit") on January 22, 2008.  The Application, the Objections and the Amended Affidavit are

discussed with more particularity below.

The Application and the Objections came on for a non-evidentiary hearing (the "First

Hearing") on January 23, 2008.  At that hearing, the UST appeared in support of the Application (*see*

First Hearing Transcript at 47-58 (statement of counsel for the UST)) and the Trustee advised the

court that the Nuevo Pueblo Trustee had consented to Attorney Fish's proposed representation (*see*

First Hearing Transcript at 18).  At the conclusion of the First Hearing, the court took that matter

---

[25]     Pending adjudication of the Application, the hearing on the Motion To Dismiss, the
Motion To Bifurcate and the related objections has been continued without date.

[26]     The Trustee admits Konover's standing as a creditor only for the purposes of adjudi-
cation of the Application and the Konover Objection.  (*See* First Hearing Transcript at 6 (statement
of the Trustee).)

under advisement.  However, on February 5, 2008 the court scheduled a non-evidentiary hearing on

the Proposed Amended Answer and the Answer Objection.  (*See* A.P. Doc. I.D. No. 109.)[27]  That

hearing was held on February 29, 2008.  At the conclusion of that hearing the court took the

Proposed Amended Answer and the Answer Objection under advisement.

## II.    THE APPLICATION, THE OBJECTIONS AND THE AMENDED AFFIDAVIT

In the Application, the Trustee seeks to retain TC&A to represent him as special counsel in

This Adversary Proceeding pursuant to 11 U.S.C. § 327(a).  The Application recites relevant

statements in Attorney Fish's supporting affidavit to the effect that:

> (i) TC&A had represented the [chapter 7] Debtor postpetition in connection with a
> claim objection against the Town of Newtown.  This matter is fully concluded.
>
> (ii)  TC&A represents Nuevo Pueblo . . . , a co-obligor with the Debtor on certain
> obligations.
>
> (iii)  TC&A represents . . . [Ms.] Silberstein . . . , an individual member in the Debtor
> and an equity security holder of the Debtor . . . .

(A.P. Doc. I.D. No. 96 ¶ 9.)  The Application asserts that such representations do not disqualify

TC&A from representing the Trustee in This Adversary Proceeding because the interests of the

Trustee and Ms. Silberstein are aligned (*i.e.,* both the Trustee and Ms. Silberstein want the Trustee

to prevail in This Adversary Proceeding).  (*Id.* ¶ 11.)

The Konover Objection asserts that TC&A "hold[s] or represent[s] an interest adverse to the

estate" on three grounds:  (a) Ms. Silberstein will benefit from This Adversary Proceeding only if

it generates a surplus distributable to equity but it might be in the best interests of the estate for the

---

[27]      As explained below, although the Proposed Amended Answer and the Answer
Objection have been rendered moot by the filing of the Amended Complaint, the court has
determined that issues in respect of the Counterclaim are relevant to adjudication of the Application
and the Objections.

Trustee to settle This Adversary Proceeding at a figure below that level; (b) the Veil Piercing Count

seeks relief against Ms. Silberstein, her (late) husband and certain affiliated entities; and (c) the

Substantive Consolidation Count could obliterate any surplus distributable to equity (*i.e.,* Ms.

Silberstein) in the Nuevo Pueblo Case.[28]  (*See* A.P. Doc. I.D. No. 100.)  Konover also argues that

TC&A has a conflict of interest in that, in litigating the Counterclaim, it would be required to use

confidential information obtained during the course of its representations of Ms. Silberstein and her

affiliates.  (*See* First Hearing Transcript at 33 (remarks of Attorney Manning).)[29]  The Franklin

Objection is substantially to the same effect as the Konover Objection.  (*See* A.P. Doc. I.D. No. 102.)

The Franklin Objection also asserts that "the history of hostility between [Ms.] Silberstein, Konover

and Franklin creates a significant impediment to . . . [TC&A's] ability to provide objective

representation and legal counsel to the Trustee in [T]his [A]dversary [P]roceeding."  (*Id.* ¶ 6.)

The Trustee filed the Amended Affidavit partially in response to the Objections.[30]  The

Amended Affidavit referred to a letter (annexed thereto, the "Letter") executed by Ms. Silberstein

waiving any conflict with respect to This Adversary Proceeding and confirming that TC&A's only

ongoing representation was its representation of Ms. Silberstein (and her "business entities") with

respect to This Adversary Proceeding.  (*See* A.P. Doc. I.D. No. 104 ¶ 5.)  The Letter is dated January

---

[28]    The parties appear to be proceeding on the assumption that there is a possibility of
such surplus.

[29]    The Trustee has stated that he has not made up his mind as to what position he will
take with respect to the Counterclaim. (*See* First Hearing Transcript at 73-74 (remarks of the
Trustee).)

[30]    The Amended Affidavit noted that TC&A's initial affidavit in support of the
Application had failed to disclose that TC&A also had represented Ms. Silberstein in connection
with probate proceedings concerning her late husband.  (*See* A.P. Doc. I.D. No. 104 ¶ 4.)

21, 2008, is from Attorney Fish to Ms. Silberstein and is executed by Ms. Silberstein as "Agreed,

Accepted and Acknowledged."  (*See* A.P. Doc. I.D. No. 104, Exhibit A.)  The Letter reads in

relevant part as follows:

> As we have discussed, Trustee Michael Daly has requested that the Firm represent him in connection with the Konover Litigation on the terms set forth in the retention application previously provided to you and a further copy of which is enclosed.

> Because the Firm currently represents or has represented you, Nuevo, and the Homesteads Community as described above, our representation of Trustee Daly with respect to the Konover Litigation might give rise to a conflict of interest.  We understand from our prior conversations with you that you believe that it is in your interest for the Firm to represent Trustee Daly in the Konover Litigation and that you have consented to our representation of him in the Konover Litigation.  We also understand that you have irrevocably waived any claim that our representation of Trustee Daly in the Konover Litigation represents a conflict of interest or that the Firm has breached any obligation it might owe you or your companies.

> As you acknowledged, your present interests in the Konover Litigation are aligned fully with those of Trustee Daly.  As we have discussed, however, it is theoretically possible for those interests to diverge at some point in the future.  For example, your interests may diverge with those of Trustee Daly where you and he cannot agree on whether or not to settle the Konover Litigation.  We understand that in such event, or in any other circumstance where you believe that your interests related to the Konover Litigation diverge from those of Trustee Daly, you would agree to obtain independent counsel and would permit the Firm to continue to represent Trustee Daly.

> This will also confirm that you have obtained independent legal advice in connection with the foregoing including your decision to grant the conflict waiver in this matter.

(*Id.*)

III.    **THE FIRST HEARING**[31]

At the First Hearing, the Trustee advised the court that it was his position that most (if not all) of the work allegedly done by Konover had been done on the Homesteads Facility rather than the Subject Property.  (*See* First Hearing Transcript at 3.)  The actual subject of This Adversary Proceeding is about $2,500,000.00 in Subject Property sale proceeds against which Konover is asserting the Alleged Lien in the amount of $1,290,606.00 (plus interest) and Franklin is asserting an alleged mortgage in the approximate amount of $1,877,400.00.  (First Hearing Transcript at 4.)

The Trustee further stated that

the reason that I chose to retain . . . TC&A was, first of all, they were the law firm, other than either Attorney Boatman or Attorney Brand, who is most familiar with the facts and circumstances that surround this case, and therefore it would be the most cost effective means of bringing this litigation up to the point where it should be after four years with a minimum . . . amount of expense to the estate.

(First Hearing Transcript at 5:22 – 6:4 (statement of the Trustee).)  (*See also* First Transcript at 20:8 - 12 ("I'm asking this court for reasons of economy, because Attorney Fish . . . knows this case as well as anybody.  So that the estate does receive the benefit, which is one of . . . [Konover's] big concerns, is obviously the dollars and cents of substitute counsel.") (statement of the Trustee).)  The Trustee further stated:

One of the reasons that I have consented to . . . [Attorney Fish's] continued representation – I mean, obviously it would have been clean, or cleaner if I said to Mr. Fish, you're not allowed to represent Ms. Silverstein.  But I need Ms. Silverstein.  I have other witnesses, but I also need Ms. Silverstein to prosecute this claim.  She was on site.  She was involved in the negotiations.  She was involved in the management.  So, we actually are in a better strategic position because . . . as long as Attorney Fish represents Ms. Silverstein we receive the benefit of the attorney/client privilege, and there's no conflict of interest at this time.

---

[31]    Because of (among other things) certain representations were made on the record at the First Hearing, the court believes that the First Hearing merits separate discussion herein.

- 22 -

(First Hearing Transcript at 19:5-16 (statement of the Trustee).)

The Trustee further stated that:

[A conflict that is alleged] . . . is a conflict because Mr. Fish represents Ms.
Silverstein in connection with this particular adversary proceeding. Not only is it
property of the estate, but if there's a surplus Ms. Silverstein would be entitled to that
surplus. So, Attorney Fish has been advising Ms. Silverstein. However, Ms.
Silverstein is aware of the fact that Attorney Fish has a duty of loyalty to this estate.
She has signed off on . . . [the Letter] that indicates that in the event that a conflict
arises between Ms. Silverstein and I concerning litigation strategy or a settlement that
Ms. Silverstein understands that Tyler Cooper will no longer represent her . . .
[,w]ould be able to continue representing the Trustee, and Ms. Silverstein would be
required to retain alternative counsel.

Your Honor, the only time that I see that situation arising is at the point of
settlement. If in fact there was a bone fide settlement offer made that I felt it was in
the best interest of the creditors of the estate to accept, and Ms. Silverstein felt that
she was being deprived of her surplus she would have standing to come in,
obviously, and object to my motion to compromise that claim.

Attorney Fish, in fact, would not be prosecuting that motion. I would be
prosecuting that motion. It would be my motion to settle the litigation. And the role
that Attorney Fish would play in that matter probably is just a witness. Why he
thinks that it is in the best interest of this bankruptcy estate to settle that matter
. . . .
[H]e would be advising me up to the point where I made the business decision
. . . [t]o settle. I mean, I'm retaining counsel. I'm retaining counsel that I believe it
[sic] competent, and I rely heavily on that. I do, however, make my own independent
judgments, and I do make my own independent decisions. But that would be after
receiving the advice of counsel, contemplating that and making a decision which way
I wanted to go. If in fact Ms. Silverstein could not accept that, then what I would
foresee is my decision to go forward with a settlement with Konover. Attorney Fish
would become a witness in the matter. And . . . Ms. Silverstein has agreed that she
would retain other counsel . . . .

I have the same interest in pursuing a maximum recovery and to disregard the
fact that Ms. Silverstein has a right to a surplus, and to settle solely on the basis of
the claims without regard to the possibility of a surplus I believe is not what the
[B]ankruptcy [C]ode intended, and it would also be, I believe, a breach of my
fiduciary responsibility. Claims don't settle for what it takes to pay creditors. Claims
settle for, quote, unquote, "the fair market value of the claim". . . . I will accept a
recommendation from competent counsel that the number that's being proposed is

- 23 -

a fair and reasonable resolution of the controversy, and if that results in a surplus to
the debtor, so be it.  I will not deprive the debtor of a surplus, of the right to a surplus
by settling based upon what the estate needs to pay the claims . . . .

(First Hearing Transcript at 9:9 – 12:12 (statement of the Trustee).)

## IV.    ANALYSIS

### A.      Legal Standards (In General)

The estate's retention of attorneys and other professionals is governed by Bankruptcy Code

§ 327 which provides in relevant part as follows:

> (a) Except as otherwise provided in this section, the trustee, with the court's
> approval, may employ one or more attorneys, accountants, appraisers, auctioneers,
> or other professional persons, that do not hold or represent an interest adverse to the
> estate, and that are disinterested persons, to represent or assist the trustee in carrying
> out the trustee's duties under this title.
> . . .
> (c) In a case under chapter 7, 12, or 11 of this title, a person is not disqualified for
> employment under this section solely because of such person's employment by or
> representation of a creditor, unless there is objection by another creditor or the United
> States trustee, in which case the court shall disapprove such employment if there is
> an actual conflict of interest.
> . . .
> (e) The trustee, with the court's approval, may employ, for a specified special
> purpose, other than to represent the trustee in conducting the case, an attorney that
> has represented the debtor, if in the best interest of the estate, and if such attorney
> does not represent or hold any interest adverse to the debtor or to the estate with
> respect to the matter on which such attorney is to be employed.

11 U.S.C.A. § 327 (West 2008).  "By regulating the trustee's ability to hire professionals, section

327 serve[s] the important policy of ensuring that all professionals appointed [to represent the

trustee] tender undivided loyalty and provide untainted advice and assistance in furtherance of their

fiduciary responsibilities."  *In re AroChem Corp.,* 176 F.3d 610, 621 (2d Cir. 1999) ("*AroChem*")

(internal quotation marks and citation omitted; modification in original).

As used in Section 327(a), "adverse interest" means:

- 24 -

 (1) to possess or assert any economic interest that would tend to lessen the value of the estate or that would create either an actual or potential dispute in which the estate is a rival claimant; or (2) to possess a predisposition under circumstances that render such a bias against the estate.

*AroChem* at 623 (internal quotation marks and citation omitted).[32]   "The concept of a conflict of interest is embraced in the adverse interest standard." *In re AroChem Corp.,* 181 B.R. 693, 700 (Bankr. D. Conn. 1995) (Shiff, J.), *aff'd, AroChem*.  "[T]he disqualifying adverse interest addressed in § 327 . . .  is either an *actual* or a *reasonably probable* conflict of interest." *Id.* (emphasis in original).[33]   "Whether an adverse interest exists is best determined on a case-by-case basis." *AroChem* at 623.  "[I]n applying Section 327(a) . . . [to a "special counsel" situation, courts] should reason by analogy to [Section] 327(e), so that where the trustee seeks to appoint counsel only as 'special counsel' for a specific matter, there need only be no conflict between the trustee and counsel's . . . client with respect to the specific matter itself." *AroChem,* 176 F.3d at 622 (internal

---

[32]    It has not been suggested that TC&A is not a "disinterested person" within the purview of Sections 101(14) and 327(a).

[33]    Rather than worry about the potential/actual dichotomy it is more productive to ask whether a professional has "either a meaningful incentive to act contrary to the best interests of the estate and its sundry creditors – an incentive sufficient to place those parties at more than acceptable risk – or the reasonable perception of one."  In other words, if it is plausible that the representation of another interest may cause the debtor's attorneys to act differently than they would without that other representation, then they have a conflict and an interest adverse to the estate.

*In re J.S. II, L.L.C.,* 371 B.R. 311, 321-22 (Bankr. N.D. Ill. 2007) (*quoting In re Leslie Fay Cos., Inc.,* 175 B.R. 525, 533 (Bankr. S.D.N.Y. 1994)) (citation omitted). *See also In re AroChem,* 181 B.R. at 700 ("Potential conflicts range from mere possibilities to reasonably anticipated probabilities. If it is determined that the latter end of that continuum is implicated, a court need not wait until the inevitable result actually occurs to disqualify counsel.").  It should be noted that, while Section 327(c) (not applicable here) refers to an "actual conflict of interest," Section 327(a) makes no such reference.

- 25 -

quotation marks omitted). The burden is on the objecting party to prove a disqualifying conflict of interest. *See In re Stamford Color Photo, Inc.,* 98 B.R. 135, 137 (Bankr. D. Conn. 1989) (Shiff, J.).

**B.    AroChem**

Both the Trustee (on the one hand) and Konover and Franklin (on the other hand) rely heavily upon *AroChem.* Accordingly, *AroChem* is discussed in some detail below.

*AroChem* arose out of the bankruptcies of AroChem Corporation and AroChem International, Inc. (collectively, "AroChem"). The trustee for the AroChem estates (the "AroChem Trustee") sought authority to employ a certain law firm (the "Firm") to pursue litigation, on AroChem's behalf, against various creditors and shareholders of AroChem (collectively, the "Defendants"). Certain of the Defendants (the "Objecting Defendants") objected to the AroChem Trustee's application to employ on the grounds that the Firm also represented Edwin E. Wells ("Wells"), a shareholder and creditor of AroChem, in other litigation in Texas against certain of the Defendants (and AroChem) (the "Wells' Texas Action"). *AroChem* at 613-15.

Relevant background is as follows. After extensive investigation (conducted through his general counsel), the AroChem Trustee concluded that he should pursue claims against the Defendants. The AroChem Trustee also concluded that although he should not pursue clams against Wells, the AroChem Trustee should retain the option to do so. The AroChem Trustee searched for counsel to represent the estates. Because the estates had no unencumbered funds, the AroChem Trustee was forced to seek counsel on a contingent fee basis. Due in no small part to its familiarity with the case (derived from its representation of Wells in the Wells' Texas Action), the Firm offered to represent the AroChem Trustee with respect to his claims against the Defendants on a contingent fee basis. No other firm offered terms nearly as favorable to the estates. *AroChem* at 615.

- 26 -

The AroChem Trustee's action (the "Trustee's Texas Action") made factual allegations virtually identical to those alleged in the Wells' Texas Action. Aware that the Firm would be pressing similar claims on behalf of both Wells and the AroChem Trustee, and that the prospect for competing recoveries would lead the Firm into a conflict of interest, the AroChem Trustee asked the bankruptcy court to approve an agreement whereby Wells and the AroChem Trustee would "pool" their respective claims and share recoveries on a roughly equal basis (a "Pooling Agreement"). The Objecting Defendants objected to the Firm's proposed representation of the AroChem Trustee, contending that the Firm had conflicts of interest on the following alleged grounds: (1) Wells was an unsecured creditor holding three proofs of claim against the estates; (2) Wells was a plaintiff in lawsuits against numerous co-creditors; (3) Wells was a defendant in derivative claims brought by William R. Harris (another shareholder) on the estates' behalf; and (4) Wells was a potential target of other claims that could be brought by the estates. *AroChem* at 616.

The Bankruptcy Court approved the AroChem Trustee's application to employ under Bankruptcy Code § 327(e). As to the proof of claim issue, the bankruptcy court concluded that the proofs of claim were irrelevant to the Trustee's Texas Action and, moreover, the Firm had agreed to discontinue representing Wells in the event the AroChem Trustee objected to those proofs of claim. As to Wells' derivative claims, the bankruptcy court noted that they, too, were not within the scope of the Firm's limited employment and, moreover, that Wells had filed a motion to dismiss those derivative claims. As to Wells' potential liability to the estates, the bankruptcy court credited the AroChem Trustee's conclusion that the estates were best served by working with Wells against the Defendants. The court also credited the AroChem Trustee's judgment that he could not successfully prosecute the Trustee's Texas Action without Wells' full cooperation. The bankruptcy

court also noted that the AroChem Trustee had preserved claims against Wells out of "an abundance

of caution," and that the Firm would not represent the estates in any later suits brought against Wells.

The bankruptcy court also concluded that there was no reasonable danger that the Firm's past

representation of Wells would weaken any claims the AroChem Trustee might have against Wells.

*Id.* at 615-17.

Finally, the bankruptcy court "noted the potential that the prosecution of Wells' claim would

undermine the vitality of the [Arochem] Trustee's claim against a common defendant, which

arguably [w]ould divide . . . [the Firm's] loyalty." *Arochem* at 617 (internal quotation marks

omitted). However, the bankruptcy court credited the AroChem Trustee's testimony that, although

there was a theoretical possibility that the development of facts in the Wells suit might favor

judgments in favor of Wells at the estate's expense, the AroChem Trustee knew of no present

conflict in that regard and did not believe the claims of Wells and the AroChem Trustee to be

mutually exclusive. Moreover, to the extent that the claims were mutually exclusive, the bankruptcy

court believed that the Pooling Agreement would cure the potential for conflict. *Arochem* at 617.

The bankruptcy court approved the proposed retention subject to negotiation of a Pooling

Agreement. The AroChem Trustee and Wells proved unable to negotiate a Pooling Agreement and

the AroChem Trustee filed a modified application to employ which contained no allusion to a

Pooling Agreement but provided that the Firm would terminate its representation of Wells with

respect to all AroChem related matters. The bankruptcy court approved the modified application

over the continued objections of the Objecting Defendants. *AroChem* at 617-18.

Certain of the Objecting Defendants appealed to the district court. While the appeal was

pending, the Firm terminated its representation of Wells entirely, limiting its relationship with Wells

to an agreement to pay any fees that his successor counsel might incur litigating appeals from dismissed claims.  The district court affirmed the bankruptcy court's order and the appellants appealed to the Second Circuit.  *AroChem* at 618.  The Second Circuit affirmed the lower court in the *AroChem* opinion.

As an initial matter, the Second Circuit held that the proposed retention should have been analyzed by the lower courts under Section 327(a) not Section 327(e).  *AroChem* at 622.  However, the Second Circuit further ruled that when the trustee proposes to retain special counsel under Section 327(a), "where the interest of the special counsel and the interest of the estate are identical *with respect to the matter for which special counsel is retained,* there is no conflict and the representation can stand."  *Id.* (emphasis in original).  Accordingly, the Second Circuit concluded, "we must ask whether *with respect to the special representation it has been hired to undertake* – . . . [the Firm] (1) holds or represents an interest that is adverse to the estate, and (2) is a 'disinterested person.'"  *Id.* (emphasis in original).

The Second Circuit stated that "counsel will be disqualified under Section 327(a) only if it *presently* 'hold[s] or represent[s] an interest adverse to the estate,' notwithstanding any interests it may have held or represented *in the past.*"  Arochem at 623 (emphasis added).  Accordingly, the Second Circuit ruled that, "[b]ecause . . . [the Firm] has terminated its representation of Wells, it no longer represents Wells' interests and therefore survives the first half of the section 327(a) test."  *Id.* Nevertheless, the Second Circuit held that "even if section 327(a) did reach past, as well as present representations, . . . [the Firm] would still not run afoul of the provision, as demonstrated below." *Id.* at 624.

- 29 -

As an initial matter, the Second Circuit held that "[b]ecause no conflict – actual or potential – arises from . . . [the Firm's] past involvement with Wells' proofs of claims and its current prosecution of the Trustee's Texas Action, . . . [the Firm's] representation of Wells in his creditor capacity does not serve as a basis for disqualification." *Arochem* at 624.  With respect to the claim that Wells was a target of claims made by the estates, the Second Circuit noted:

> There is no evidence that proof of any claims the Estates might have against Wells would run counter to proof the Trustee would need to establish in order to succeed in the Trustee's Texas Action . . . . [T]here is nothing . . . but *raw speculation* to support a claim that a conflict might develop.

*AroChem* at 625-26 (emphasis added; internal quotation marks omitted).  The Second Circuit continued:

> On a related point, appellants argue that the Estates have additional claims against Wells that will be lost if . . . [the Firm] is allowed to represent the Trustee . . . . [A]s to the ability to pursue Wells, the Trustee acknowledges that . . . [the Firm] will use Wells as its principal fact witness in the Trustee's Texas Action, and that, as a result, Wells' version of the facts will predominate.  But the Trustee, on the advice of his general counsel, made a judgment that it was in the best interest of the Estates to sue the defendants named in the Trustee's Texas Action, and to that end align its interest with Wells . . . .
>
> Retention is proper here . . . [because of] an identity of interests between the trustee and special counsel's former client with respect to the special matter for which special counsel is retained . . . .
>
> That is, with respect to the matter for which . . . [the Firm] is being retained – the Trustee's Texas Action – Wells and the Estates share an identity of interests.  The Trustee, in the Trustee's Texas Action, and Wells, in the Wells' Texas Action, each seek to establish the same set of predicate facts in order to prevail over many of the same defendants.

*AroChem* at 626-27.

Finally, the Second Circuit rejected the appellants' argument that Wells had "hijacked" the AroChem Trustee:

- 30 -

Appellants complain that the Trustee chose to file the Trustee's Texas Action only because Wells, through . . . [the Firm], 'hijacked' the Trustee to protect himself and advance his personal agenda. But the record shows that the decision to file the Trustee's Texas Action was made by the Trustee on the advice of his general counsel, . . . not by or on the exclusive advice of Wells or . . . [the Firm] . . . .

At bottom, appellants' claim that Wells and . . . [the Firm] 'hijacked' the Trustee is an indirect attack on the Trustee's decision to file the Trustee's Texas Action in the first place. Perhaps the Trustee could have chosen to pursue Wells rather than the [Defendants] . . . . But the bankruptcy court made a finding, for which there is support in the record, that the Trustee made an independent investigation and concluded that the Estates would best be served if the Trustee aligned . . . [himself] with Wells and pursued . . . [the Defendants] instead.

*Arochem* at 627-28.

### C.    <u>Application of Law to Fact</u>

The court begins with certain observations. First, the Trustee is an experienced and capable panel trustee for this district and, accordingly, the court has given substantial weight to his positions and arguments. Second, the court also gives substantial weight to the UST's support of the Trustee's position. Finally, the court has full confidence in the integrity of TC&A (and of Attorney Fish). However, notwithstanding the foregoing and for the reasons discussed below, the court has concluded that the Application should be denied (without prejudice, as explained below) and the Objections sustained.

### 1.    <u>Representation by TC&A (Not Including the Counterclaim)</u>[34]

As noted above, only a "reasonably probable conflict of interest" will disqualify proposed counsel under Section 327. *See In re AroChem Corp.,* 181 B.R. at 700. For example, in *AroChem,* the Second Circuit did not disqualify the Firm because "there . . . [was] nothing . . . but *raw*

---

[34]    For analytical reasons, the court will consider separately the effect of the Counterclaim on the propriety of the proposed representation.

*speculation* to support a claim that a conflict might develop." *AroChem* at 626 (emphasis added).

Here, the objectors argue that it is reasonably probable that a conflict may develop between the

Trustee and Ms. Silberstein over the prosecution (particularly settlement discussions) of This

Adversary Proceeding because of Ms. Silberstein's interest in generating a surplus in this case for

equity.

It is true that most debtors and/or their equity holders have an interest in producing a surplus

in their respective bankruptcy cases (at least in theory). However, in some (if not many) cases the

possibility that an actual conflict will develop is sufficiently remote so as not to preclude a

concurrent representation of the trustee and a debtor/ equity holder. This is not such a case. As

demonstrated in part I.A, above, Ms. Silberstein has, for her own personal benefit, engaged in a

pattern of conduct (either in her own name or through affiliated entities) in This Case, the Nuevo

Pueblo Case and the Homesteads Case which frequently has placed her at odds with the estates and

with the Trustee. Based upon that record, the court finds that there is a "reasonably probable conflict

of interest" between the Trustee and Ms. Silberstein with respect to This Adversary Proceeding,

particularly with respect to settlement discussions.[35]

Nor does the Letter cure the problem. The Letter provides for termination of TC&A's

representation of Ms. Silberstein only after a dispute between Ms. Silberstein and the Trustee

---

[35]     *AroChem* is distinguishable on an additional point: in *AroChem* it was likely that if
the Firm's representation was disapproved, the AroChem Trustee would be unable to obtain any
replacement counsel. The situation here is not that extreme. It is true that requiring the Trustee to
replace counsel for a third time would cause delay and some additional expense. However, it has
not been suggested that replacement counsel cannot be found. Moreover, loss of the attorney-client
privilege in future discussions between Attorney Fish and Ms. Silberstein is loss of a litigation
advantage and the Trustee has not made any showing that such potential loss is so deleterious as to
compel a different result than the result reached here.

actually has been identified. (*See* A.P. Doc. I.D. No. 104, Exhibit A.) That does not address the problem that TC&A's dual loyalties may taint the conduct of this litigation (particularly settlement discussions) prior to that point.[36]

The foregoing problem can be cured by TC&A's termination of its representation of Ms. Silberstein. *See AroChem* at 623 (only present representations are disqualifying under Section 327(a)). The court believes that there is at least some possibility that, in light of this decision, TC&A may elect to terminate that representation. However, if the Counterclaim would disqualify TC&A in any event, termination of the Silberstein representation would be to no avail. Accordingly, the court believes it appropriate now to analyze whether the Counterclaim would be problematic for TC&A.

## 2.    Representation by TC&A (the Counterclaim)

The parties either have expressly or impliedly conceded that if the proposed representation would require TC&A to litigate the Counterclaim, then the proposed representation cannot be approved on that basis alone. The court agrees. However, the court concludes that the proposed representation would not require TC&A to litigate the Counterclaim. That is because the court concludes that, for the reasons discussed below, the Counterclaim (if triable at all in This Adversary Proceeding) ought to be tried separately from the Amended Complaint.[37] Accordingly, if TC&A

---

[36]    Counsel for Konover alleged at the First Hearing that Attorney Fish already had aborted settlement discussions in This Adversary Proceeding (which Attorney Fish denied). Statements of counsel are not evidence. Accordingly, the court has given no weight to Attorney Manning's remarks in that regard in reaching this decision.

[37]    A full consideration of the matters herein and the arguments of the parties has led the court to that conclusion which necessarily renders the Motion to Bifurcate moot (in part).

terminates its representation of Ms. Silberstein,[38] a proposed representation not extending to the Counterclaim could be approved.

Rule 42(b) of the Federal Rules of Civil Procedure (made applicable here by Rule 7042 of the Federal Rules of Bankruptcy Procedure) provides in relevant part as follows: "For convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of . . . counterclaims . . . ." Fed R. Civ. P. 42(b). A trial court may order severance pursuant to Rule 42(b) *sua sponte.* *See* 9A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2388, at 126 n.25 (3 ed. 2008) ("*W&M*") (citing cases). "Federal Rule 42(b) is sweeping in its terms and allows the . . . [trial] court, in its discretion, to grant a separate trial of any kind of issue in any kind of case." 9A *W&M* § 2389, at 126.

The Amended Complaint alleges that some or all of Konover's work was performed on the Homesteads Facility rather than on the Subject Property. Homesteads (among twelve other entities and/or individuals) is a target of the Veil Piercing Count. (*See* A.P. Doc. I.D. No. 55 ¶ 27.) However, given the disposition of the Homesteads Case discussed above, that targeting has very little practical meaning here. Otherwise the Veil Piercing Count addresses Homesteads only to the extent that it alleges that Ms. Silberstein operated Homesteads as a unit with a group of ten allegedly related entities. (*See id.* ¶¶ 1-27.) Thus, proof of the Veil Piercing Count has very little (if any) overlap with proof of the Amended Complaint.

The Substantive Consolidation Count primarily concerns the relationship between the Debtor and Nuevo Pueblo. *Cf. In re Augie/Restivo Baking Co., Ltd.,* 860 F.2d 515 (2d Cir. 1988). The

---

[38]     TC&A also should formally withdraw its appearances for Ms. Silberstein and/or her affiliates in the three relevant cases.

Amended Complaint does not refer to Nuevo Pueblo at all.  Thus, the Substantive Consolidation Count also has little meaningful relationship to the Amended Complaint.

For the reasons discussed above, the court concludes that trial of the Counterclaim would unduly complicate the trial of the Amended Complaint and the Counterclaim (if tried at all) ought to be tried separately from the Amended Complaint.[39]

## V.    **CONCLUSION**

For the reasons discussed above:

(1)  the Application (A.P. Doc. I.D. No. 96 (as amended by Doc. I.D. No. 104)) is denied without prejudice to its renewal in accordance with this opinion;

(2)  the Objections (A.P. Doc. I.D. Nos. 100 and 102)  are sustained;

(3)   the Proposed Amended Answer (A.P. Doc. I.D. No. 55) and the Answer Objection (A.P. Doc. I.D. No. 56) are moot;

(4)   it is determined that the Counterclaim, if triable at all in This Adversary Proceeding, ought to be tried separately from the Amended Complaint; and

---

[39]      It appears that Attorney Brand may have informally agreed to a joint trial of the Amended Complaint and the Counterclaim.  *See* A.P. Doc. I.D. No. 116 at 3:22 – 4:12 (remarks of the Trustee).)   The short answer to the foregoing is that this court was not a party to any such agreement. *Cf.* 9A *W&M* § 2388, at 92-94 ("It is the interest of efficient judicial administration that is to be controlling under . . . [Rule 42(b)], rather than the wishes of the parties.").

(5)  the Motion To Bifurcate (A.P. Doc. I.D. No. 83) is moot to the extent that it

seeks to try the Amended Complaint together with the Veil Piercing Count.

It is **SO ORDERED**.

Dated: June 26, 2008                                        BY THE COURT

                                        Lorraine Murphy Weil
                                   **Lorraine Murphy Weil**
                                   **United States Bankruptcy Judge**